# EXHIBIT A

| State of Alabama<br>Unified Judicial System<br>Form C-34   Rev. 7/2023 | **SUMMONS**<br>**- CIVIL -** | **Court Case Number**<br>66-CV-2024-900039.00 |
|---|---|---|

## IN THE CIRCUIT COURT OF WILCOX COUNTY, ALABAMA
### TOWN OF PINE HILL V. 3M COMPANY, INC. ET AL

**NOTICE TO:** 3M COMPANY, INC., CORPORATION SERVICE CO 640 S LAWRENCE ST, MONTGOMERY, AL 36104
*(Name and Address of Defendant)*

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S), MATTHEW ROSS GRIFFITH MR. ,
*[Name(s) of Attorney(s)]*

WHOSE ADDRESS(ES) IS/ARE: 301 St. Louis Street, Mobile, AL 36602 .
*[Address(es) of Plaintiff(s) or Attorney(s)]*

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

### TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL PROCEDURE TO SERVE PROCESS:

☐ You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

☑ Service by certified mail of this Summons is initiated upon the written request below of     TOWN OF PINE HILL
pursuant to the Alabama Rules of the Civil Procedure.     *[Name(s)]*

| 07/09/2024 | /s/ HON. CAROLYN POSEY | By: |
|---|---|---|
| *(Date)* | *(Signature of Clerk)* | *(Name)* |

☑ Certified Mail is hereby requested.     /s/ MATTHEW ROSS GRIFFITH MR.
*(Plaintiff's/Attorney's Signature)*

### RETURN ON SERVICE

*Certified Mail*

☐ Return receipt of certified mail received in this office on _____ .
*(Date)*

*Personal/Authorized*

☐ I certify that I personally delivered a copy of this Summons and the Complaint or other document to
_____ in _____ County, Alabama on _____ .
*(First and Last Name of Person Served)*    *(Name of County)*    *(Date)*

Document left:

    ☐ with above-named Defendant;

    ☐ with an individual authorized to receive service of process pursuant to Rule 4(c), Alabama Rules of Civil Procedure;

    ☐ at the above-named Defendant's dwelling house or place or usual place of abode with some person of suitable age and discretion then residing therein.

*Return of Non-Service*

☐ I certify that service of process of this Summons and the Complaint or other document was refused by
_____ in _____ County, Alabama on _____ who is:
*(First and Last Name of Person Served)*    *(Name of County)*    *(Date)*

    ☐ the above-named Defendant;

    ☐ an individual authorized to receive service of process pursuant to Rule 4(c), Alabama Rules of Civil Procedure;

☐ As a designated process server pursuant to Rule 4(i)(1)(B), Alabama Rules of Civil Procedure, I certify that I am at least 19 years of age, I am not a party to this proceeding, and I am not related within the third degree by blood or marriage to the party seeking service of process.

| | |
|---|---|
| *(Type of Process Server)* | *(Server's Signature)*     *(Address of Server)* |
| *(Badge or Precinct Number of Sheriff or Constable)* | *(Server's Printed Name)* |
| *(Badge or Precinct Number of Sheriff or Constable)* | *(Telephone Number of Designated Process Server)* |

ELECTRONICALLY FILED
7/9/2024 8:57 AM
66-CV-2024-900039.00
CIRCUIT COURT OF
WILCOX COUNTY, ALABAMA
HON. CAROLYN POSEY, CLERK

## IN THE CIRCUIT COURT OF WILCOX COUNTY, ALABAMA

| | | |
|---|---|---|
| THE TOWN OF PINE HILL | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO:**_____ |
| | ) | |
| 3M COMPANY, INC.; BASF | ) | **TRIAL BY JURY REQUESTED** |
| CORPORATION, DUPONT | ) | |
| DENEMOURS, INC.; CORTEVA, INC.; | ) | |
| EIDP, INC., F/K/A E.I. DU PONT DE | ) | |
| NEMOURS AND COMPANY; THE | ) | |
| CHEMOURS COMPANY; DAIKIN | ) | |
| AMERICAN, INC.; INTERNATIONAL | ) | |
| PAPER COMPANY; SHANNON DIXON | ) | |
| STEVE WEBB;CARLA PEARSON; | ) | |
| SOLENIS LLC; and FICTITIOUS | ) | |
| DEFENDANTS A-J, those persons, | ) | |
| corporations, Partnerships or entities | ) | |
| who acted with as principal or agent, | ) | |
| for or in concert with the other named | ) | |
| Defendants and/or whose acts caused | ) | |
| or contributed to the damages sustained | ) | |
| by the Plaintiff, whose identities are | ) | |
| unknown to the Plaintiff, but which | ) | |
| will be substituted by amendment | ) | |
| when ascertained, | ) | |

## COMPLAINT

The Town of Pine Hill files the following Complaint against 3M Company, Inc.; BASF Corporation; DuPont DeNemours, Inc.; Corteva, Inc..; EIDP, Inc., f/k/a E.I. Du Pont de Nemours and Company; The Chemours Company; Daikin American, Inc..; International Paper Company; Shannon Dixon; Steve Webb; Carla Pearson; Solenis LLC; and Fictitious Defendants A-J (collectively "Defendants"), alleging as follows:

## STATEMENT OF THE CASE

1.      Plaintiff, Town of Pine Hill ("Pine Hill") has and continues to be damaged due to the negligent, willful, and wanton conduct of the Defendants, as well as the nuisance and trespass caused by the past and present release of toxic chemicals, including per- and poly-fluoroalkyl substances ("PFAS") (other than Aqueous Film Forming Foam) and related chemicals from paper mills, namely International Paper.

2.      Each of the Defendants, jointly and severally, have actively caused PFAS pollution to the Alabama River, specifically the portion of the river from which Pine Hill draws raw water.

3.      At the intake site on the Alabama River, the raw water contains levels of PFAS well exceeding the EPA's Maximum Contaminant Levels.

4.      There is no detectible concentration of either PFOA or PFOS in drinking water that is without adverse health effects.

5.      Pine Hill provides treated drinking water directly to its own residential and commercial customers in the Town of Pine Hill, as well as to other customers in or around Wilcox County.

6.      Certain named and Fictitious Defendants supply chemical products and materials to paper mills located upstream of Pine Hill's water intake site. Certain named and Fictitious Defendants use chemical compounds, products, and materials that contain or degrade into PFAS. Industrial wastewater released into the environment from manufacturing plants contains high levels of PFAS.

7.      Certain named and Fictitious Defendants' manufacturing facilities release PFAS directly into the environment through wastewater, air emissions, and stormwater. These releases contaminate the Alabama River with PFAS, among other toxic chemicals.

2

8.      Named and Fictitious Defendants' PFAS (other than Aqueous Film Forming Foams) have contaminated the Alabama River at Pine Hill's water intake site, and the chemicals cannot be removed by the water treatment processes that Pine Hill currently utilizes.

9.      As a direct and proximate result of Defendants' contamination of Pine Hill's raw water source, Pine Hill has suffered substantial economic and consequential damage, including, but not limited to, expenses associated with the future installation and operation of a filtration system capable of removing PFAS from the water; expenses associated with the removal or remediation of contaminated property; expenses incurred to monitor PFAS contamination levels; and expenses associated with responsible disposal of PFAS laden waste.

10.      Pine Hill seeks compensatory and punitive damages to the fullest extent allowed by award from a jury. Pine Hill also seeks equitable and injunctive relief compelling the Named and Fictitious Defendants to remediate their contamination and prevent additional releases of PFAS and other toxic chemicals into Pine Hill's raw water source.

## JURISDICTION

11.      Jurisdiction is proper in this Court pursuant to Ala. Code §12-11-30(1) (1975), as Pine Hill's claims exceed $20,000.

12.      Pine Hill asserts no federal cause of action in this Complaint.

13.      Venue is proper in this Court pursuant to Ala. Code § 6-3-7(a)(1), as a substantial part of the events giving rise to the claims occurred in Wilcox County.

14.      Defendants' wrongful acts which form the basis of this Complaint, including the ongoing and continuing trespass and the creation of an ongoing and continuing nuisance, injured

Pine Hill in Wilcox County within the applicable statutes of limitations and/or have caused ongoing and continuing damages suffered by Pine Hill within the applicable statutes of limitations.

## PARTIES

15.    The Town of Pine Hill is a municipality located in Wilcox County, Alabama, organized under the laws of the State of Alabama.

16.    Defendant 3M Company ("3M") is a foreign corporation qualified to do business in the State of Alabama and is causing injury in Wilcox County. Among other acts and omissions, 3M has for many years manufactured and supplied PFAS to one or more of the Defendants in this action. 3M continues to manufacture PFAS.

17.    Defendant BASF Corporation ("BASF") is a foreign corporation qualified to do business in the State of Alabama and is causing injury in Wilcox County. Defendant BASF has for many years manufactured and supplied PFAS to the paper industry for use in paper products and goods.

18.    Defendant EIDP, Inc., f/k/a E.I. du Pont de Nemours and Company ("Old DuPont") is a foreign corporation qualified to do business in the State of Alabama and is causing injury in Wilcox County. Among other acts and omissions, Defendant EIDP, Inc., f/k/a E.I. du Pont de Nemours and Company has manufactured and supplied PFAS to paper mills.

19.    Defendant The Chemours Company ("Chemours"), a spin-off of EIDP, Inc., f/k/a E.I. du Pont de Nemours and Company, is a foreign corporation qualified to do business in the State of Alabama and is causing injury in Wilcox County. Among other acts and omissions, Defendant Chemours has manufactured and supplied PFAS to paper mills. Upon information and

belief, Chemours "remains committed" to fluorine (also known as PFAS) chemistry and continues to make and sell PFAS.

20.     Defendants EIDP, Inc., f/k/a E.I. du Pont de Nemours and Company and the Chemours Company shall hereinafter be referred to collectively as "DuPont."

21.     Defendant DuPont de Nemours, Inc. ("New DuPont"), is a foreign corporation causing injury in Wilcox County. In 2015, after Old DuPont spun off Chemours, Old DuPont merged with Dow, Inc., not a party to this case, and transferred Old DuPont's historic assets and liabilities to other entities, including New DuPont. In connection with these transfers, on information and belief, New DuPont assumed or purported to assume, certain Old DuPont liabilities — including those relating to PFAS, as in the instant case. New DuPont's assumption of these liabilities creates contacts sufficient with the State of Alabama such that it is fair to assert jurisdiction over it.

22.     Defendant Corteva, Inc. is a foreign corporation qualified to do business in the State of Alabama and is causing injury in Wilcox County. In 2019, New DuPont spun off a new, publicly traded company, Corteva, which currently holds Old DuPont as a subsidiary. In connection with these transfers, on information and belief, Corteva assumed or purported to assume certain Old DuPont liabilities—including those relating to PFAS as in the instant case.

23.     New Dupont, Old Dupont, and Corteva are collectively the "Dupont Defendants."

24.     Defendant Daikin America, Inc. ("Daikin") is a foreign corporation qualified to do business in the State of Alabama and is causing injury in Wilcox County. Defendant Daikin has for many years manufactured and supplied PFAS to paper mills. Daikin America is the self-professed "world's foremost developer and manufacturer of fluorochemical products."

25.     Defendant International Paper Company ("International Paper") is a foreign corporation qualified to do business in the State of Alabama and is causing injury in Wilcox County. Defendant International Paper operates paper mills that discharge PFAS into the Alabama River.

26.     Defendant Shannon Dixon is an Environmental Manager at the International Paper Pine Hill Mill.  Defendant Dixon is an adult resident of the State of Alabama and is causing injury in Wilcox County.

27.     Defendant Steve Webb is a Mill Manager at the International Paper Pine Hill Mill. Defendant Webb is an adult resident of the State of Alabama and is causing injury in Wilcox County.

28.     Defendant Carla Pearson is an Environmental Specialist at the International Paper Riverdale Mill in Selma, Alabama. Defendant Pearson is an adult resident of the State of Alabama and is causing injury in Wilcox County.

29.     Defendant Solenis LLC ("Solenis") is a foreign limited liability company qualified to do business in the State of Alabama and is causing injury in Wilcox County. Solenis supplies PFAS to paper mills. The discharge from these paper mills' manufacturing processes includes PFAS, which in turn pollutes the environment – including the Alabama River.

30.     Fictitious Defendants A, B, C, D, E, F, G, H, I, & J are those persons, corporations, partnerships, or entities who released PFAS and their precursor compounds, including, but not limited to PFOA, PFOS, and related chemicals into the water supply upstream of Pine Hill's intake site, who acted either as principal or agent, for or in concert with the named Defendants, and/or whose acts caused or contributed to the damages sustained by Pine Hill, whose identities are unknown to Pine Hill, but which will be substituted by amendment when ascertained.

## FACTUAL ALLEGATIONS

31.     PFAS are man-made, laboratory-produced, synthetic chemicals that do not exist naturally in the environment, are harmful at extremely low levels, and for decades were widely used in consumer, household, and other commercial products, as well as industrial uses. PFAS are a class of nearly 12,000 individual compounds which includes the individual compounds known as PFOA and PFOS.

32.     Despite the existence of 12,000 individual compounds, current EPA certified laboratory testing methods can only detect less than thirty individual PFAS compounds in drinking water.

33.     Defendants' PFAS and PFAS-containing products are known to contain a number of PFAS impurities and precursors that current laboratory methods cannot yet detect.

34.     Defendants are owners and operators of, or the chemical and material suppliers to, paper mills which use various PFAS and PFAS containing products in the manufacturing process.

35.     Defendants and their paper mill customers have and continue to release PFAS, their precursors, and related chemicals directly into the environment and abutting rivers in their industrial wastewater, emissions, stormwater, and solid waste. This PFAS laden waste enters and then pollutes the Alabama River.

36.     Defendants 3M, BASF, DuPont, Daikin, and Solenis ("Manufacturing Defendants") manufacture, supply, and sell PFAS and products that contain PFAS which are used in paper manufacturing in Alabama, specifically by International Paper. Paper manufacturing is a significant source of PFAS contamination in the Alabama River. PFAS manufacturers collaborate closely with their customers in the formulation of PFAS, application, and disposal processes.

7

37.     Companies that manufacture coated paper and cardboard, specifically International Paper, treat products with PFAS and/or PFAS containing products.

38.     In addition to releasing PFAS in industrial wastewater as described above and herein, Defendants have also released PFAS by way of emissions, leaks, and spills into stormwater drains and sewers which feed into local creeks, streams, and rivers that ultimately reach the Alabama River in Wilcox County.

39.     Defendants knew that PFAS should not be released in wastewater or to stormwater which impacts local creeks, streams, and tributaries to the Alabama River

40.     Pine Hill does not allege contamination of drinking water sources occurred through Aqueous Film-Forming Foam. Contamination found in Pine Hill's drinking water and drinking water source includes PFAS not found in Aqueous Film-Forming Foam.

41.     PFAS are pervasive in industrial and consumer products such as paper and containerboard. The stable carbon-fluorine bonds that make PFAS so pervasive in industrial and consumer products also results in their environmental persistence, as there is no known environmental degradation mechanism for these chemicals.

42.     In 2009, based on the science available at that time, EPA published provisional drinking water health advisories for short-term exposure (weeks to months) to PFOA and PFOS. The short-term health advisory for PFOA was 400 parts per trillion ("ppt"), or 0.4 parts per billion ("ppb"). The advisory for PFOS was 200 ppt, or 0.2 ppb.

43.     On May 19, 2016, due to the evolution of the science surrounding the health effects associated with the consumption of PFOA and PFOS in drinking water, EPA published a lifetime Drinking Water Health Advisory of 70 ppt (0.07 ppb) for combined concentrations of PFOA and PFOS ("May 2016 EPA Health Advisory" or "Health Advisory limit").

44.    On June 15, 2022, the EPA again lowered the 2016 Drinking Water Health Advisory to 0.004 ppt for PFOA and 0.02 ppt for PFOS, meaning there is no detectible concentration of either PFOA or PFOS in drinking water that is without adverse health risks. It also issued new drinking water health advisories for 10 ppt for GenX compounds and 2,000 ppt for PFBS.

45.    On April 10, 2024, the EPA announced the Final National Primary Drinking Water Regulation for six PFAS compounds, including PFOA and PFOS. The final Maximum Contaminant Level ("MCL") for PFOA and PFOS are each 4.0 ppt.

The Final health-based Maximum Contaminant Level Goal for PFOS and PFOA is **zero**.

46.    While Defendants have long been aware of the persistence and toxicity of certain chemicals, Defendants have knowingly and intentionally caused releases of these chemicals into the rivers and watersheds which supply Pine Hill's raw water.

47.    The Manufacturing Defendants have known for at least 40 years that certain PFAS persist in the environment and accumulate in the bodies of humans, fish, and test animals.

48.    DuPont Defendants have long been aware of the persistence and toxicity of PFAS, yet knowingly and intentionally continued to promote and sell these chemicals to the paper and textile manufacturing industries including International Paper. Such promotions included literature sponsored by Defendants suggesting these chemicals are not harmful.

49.    For decades, 3M manufactured PFOA and sold it to DuPont Defendants for its manufacture of Teflon and other products. In May 2000, 3M decided to stop producing PFOA. Despite DuPont's knowledge of the risks to human health posed by PFOA, in response to the withdrawal of 3M from the market, DuPont opened its own plant to manufacture PFOA.

50.     In 2015, Dupont spun off its performance chemicals business (which included the design, manufacture, marketing, and sale of PFAS, as well as the environmental liabilities) to Chemours.

51.     Defendants have long supplied PFAS to the paper industry in Alabama.

52.     Daikin America is the self-professed "world's foremost developer and manufacturer of fluorochemical products" and "largest supplier of flourorepellents [sic] in the word."

53.     Upon information and belief, Daikin continues to sell PFAS chemistry, manufactured in Alabama and elsewhere for use in the paper and containerboard industries.

54.     BASF is the self-professed "world's leading supplier of chemicals to the paper and board industry" and a PFAS manufacturer for the paper industry.

55.     Solenis is a chemical manufacturer and upon information and belief, a significant manufacturer of PFAS chemicals for the paper industry.

56.     Upon information and belief, 3M, Dupont Defendants, BASF, Solenis, and Daikin sold PFAS treatment to create oil and grease-resistant paper to paper mills and for use in other paper-manufacture processes, including to International Paper in Alabama.

57.     International Paper operates three paper mills that discharge wastewater to the Alabama River and its tributaries.

58.     International Paper's Prattville, Alabama mill manufactures containerboard and discharges wastewater containing PFAS to Autauga Creek and the Alabama River.

59.     International Paper's Riverdale Mill in Selma, Alabama manufactures specialty paper including containerboard and discharges wastewater containing PFAS to the Alabama River

60.     International Paper's Pine Hill Mill manufactures containerboard for industrial packaging and cardboard and discharges wastewater, landfill leachate, and stormwater containing PFAS to the Alabama River

61.     Upon information and belief, Shannon Dixon, Steve Webb, and Carla Pearson, each personally participated in the tortious conduct of International Paper by failing to properly capture PFAS-laden material, waste, waste streams, and effluent in a water-intensive manufacturing process, causing PFAS contamination of the Alabama River upstream and adjacent to Pine Hill's source water intake. These Defendants did this despite knowledge that PFAS is toxic, biomagnifying, does not degrade, and does not naturally dissipate in surface waters.

62.     Based on information and belief, all Defendants knew or should have known that, in its intended and/or common use, PFAS would very likely injure and/or threaten public health and the environment, where this knowledge and information was accessible to all Defendants.

63.     Based on information and belief, all Defendants knew or should have known that PFAS are mobile and persistent, bioaccumulative, biomagnifying, and toxic. Despite this knowledge, Manufacturing Defendants concealed from the public and government agencies their knowledge of the risk of harm to the public posed by PFAS.

64.     In 2002, EPA took regulatory action under the Toxic Substances Control Act to limit the future manufacture of PFOA, PFOS, and related chemicals based on the persistence and toxicity of these chemicals. In response, Manufacturing Defendants undertook to develop and manufacture and supply PFAS with six or fewer carbons, such as GenX, referred to as Short-Chain PFAS.

65.     Defendants are aware that, like PFOA and PFOS, these Short-Chain PFAS are also not subject to biodegradation, can accumulate in human blood, and pose a risk to human health.

66.     Pine Hill's testing for PFAS has detected levels of PFOS and PFOA that exceed the 2024 EPA Maximum Contaminant Levels. In addition, Pine Hill has found other PFAS in its water supply, including Short-Chain PFAS.

67.     Pine Hill's current water filtration systems are not designed for removing PFAS to levels below the 2024 EPA Maximum Contaminant Levels.

68.     Pine Hill will continue to incur costs of disposing of PFAS laden waste from water filtration media and sewage sludge.

69.     Due to the high levels of PFAS found in its water supply, Pine Hill has and will continue to incur additional expenses and potential lost profits.

70.     Due to the ongoing and continuing trespass, Pine Hill has suffered and continues to suffer substantial damage to real property by Defendants' invading and contaminating the pipes, appurtenances, filters, and fixtures on Pine Hill's real property with PFAS.

71.     Due to the ongoing and continuing trespass, Pine Hill has suffered and continues to suffer substantial damage to personal property by Defendants' invading and contaminating the pipes, appurtenances, filters, and fixtures on Pine Hill's personal property, and Pine Hill's finished drinking water with PFAS.

72.     As a direct and proximate result of Defendants' contamination of Pine Hill's water supply, Pine Hill has been damaged by, including, but not limited to, past and future monitoring and testing expenses, PFAS containing sludge disposal costs, potential lost revenues and profits, and expenses in remediating Defendants' contamination.

73.     Pine Hill is not seeking to recover through this Complaint any relief for contamination or injury related to Aqueous Film Forming Foam that contains PFAS.

## COUNT ONE

### Negligence

74.     Pine Hill incorporates all prior paragraphs by reference as if fully set forth herein.

75.     Defendants owed a duty to Pine Hill to exercise due and reasonable care in their distribution, sales, manufacturing, disposal, and other operations to prevent the contamination of PFAS into the water supply.

76.     As described herein, Defendants jointly and severally breached duties owed to Pine Hill, including failing to prevent PFAS contamination in the Alabama River. Under the circumstances, Defendants' breaches constitute negligent, willful, and/or reckless conduct. Defendants' conduct, practices, actions, and inactions combined and concurred to harm Pine Hill, and as a result Pine Hill has incurred damages and will incur reasonably ascertainable expenditures in the future.

WHEREFORE, Pine Hill demands judgment for compensatory damages against all Defendants, jointly and severally, in an amount to be determined by a struck jury in an amount in excess of the jurisdictional minimum of this Court, past and future, plus interest and costs.

## COUNT TWO

### Public Nuisance

77.     Pine Hill incorporates all prior paragraphs by reference as if fully set forth herein.

78.     Pine Hill owns and occupies property used to serve its water customers, including a water treatment plant, water distribution system, and offices.

79.     Defendants have created a nuisance by failing to prevent the contamination of PFAS into the waters throughout the State of Alabama, which has caused and continues to cause

contamination of Pine Hill's water supply, thereby causing Pine Hill hurt, inconvenience, and harm.

80.     The specific damages incurred by Pine Hill include, but not limited to, expenses associated with the future installation and operation of a filtration system capable of removing Defendants' chemicals from the water; expenses incurred to monitor PFAS contamination levels; expenses incurred to remediate Defendants' contamination; expenses to properly dispose of PFAS removed from drinking water; and lost profits and sales. These special damages are unique to drinking water treatment providers like Pine Hill.

81.     It was reasonably foreseeable, and in fact known to Defendants, that their actions would place, and have placed, Pine Hill at risk of harm. The nuisance has caused substantial damage and will continue to cause damages until it is satisfactorily abated.

WHEREFORE, Pine Hill demands judgment for compensatory damages against all Defendants, jointly and severally, in an amount to be determined by a struck jury in an amount in excess of the jurisdictional minimum of this Court, past and future, plus interest and costs.


## COUNT THREE

### Private Nuisance

82.     Pine Hill incorporates all prior paragraphs by reference as if fully set forth herein.

83.     Defendants have created a private nuisance by their failure to prevent the contamination of PFAS of Pine Hill's water treatment facilities, thereby causing Pine Hill hurt, inconvenience, and harm.

84.     The contamination of Pine Hill's water treatment facilities constitutes a private nuisance depriving Pine Hill of the ability to deliver clean and uncontaminated water and sewer services to its customers.

85.     It was reasonably foreseeable, and in fact known to Defendants, that their actions would combine and concur to contaminate, and have contaminated, and will continue to contaminate Pine Hill's water treatment facilities. The nuisance has caused substantial damage and will continue to cause damage until it is satisfactorily abated.

WHEREFORE, Pine Hill demands judgment for compensatory damages against all Defendants, jointly and severally, in an amount to be determined by a struck jury in an amount in excess of the jurisdictional minimum of this Court, past and future, plus interest and costs.


## COUNT FOUR

### Trespass

86.     Pine Hill incorporates all prior paragraphs by reference as if fully set forth herein.

87.     Pine Hill owns and occupies property used to serve its water customers, including water treatment plants, water distribution system, sewer treatment facilities, and offices.

88.     Pine Hill produces and sells personal property to customers in the form of finished drinking water.

89.     Defendants' intentional acts in failing to contain the release of PFAS, the trespassing agent, knowing that they would contaminate water, caused an invasion of Pine Hill's real and personal property by Defendants' PFAS chemicals, which has affected and is affecting Pine Hill's interest in the exclusive possession of its property.

90.     Pine Hill did not consent to the invasion of their property by Defendants' PFAS chemicals.

91.     Defendants knew or should have known that their PFAS would contaminate the water supply and facilities and result in an invasion of Pine Hill's possessory interest in their real and personal property.

92.     Defendants' trespass is continuing.

93.     Defendants' continuing trespass has impaired Pine Hill's use of real and personal property and has caused substantial damage by diminishing its value.

WHEREFORE, Pine Hill demands judgment for compensatory damages against all Defendants, jointly and severally, in an amount to be determined by a struck jury in an amount in excess of the jurisdictional minimum of this Court, past and future, plus interest and costs.


## COUNT FIVE

### Wantonness and Punitive Damages

94.     Pine Hill incorporates all prior paragraphs by reference as if fully set forth herein.

95.     Defendants owed a duty to Pine Hill to exercise due and reasonable care in their manufacture, distribution, supply, and use of PFAS and to prevent the release of PFAS into the water supply.

96.     In breaching the duties described above and herein, Defendants acted in a wanton, willful, and reckless manner.

97.     Defendants knew or should have known the danger to Pine Hill created by Defendants' conduct, practices, actions, and inactions.

98.     Defendants knew or should have known of the likely impact, harm, damage, and injury their conduct would have on the Pine Hill.

99.     Defendants' conduct, practices, and inactions evidence Defendants' reckless disregard of the known risk of harm to the Pine Hill.

100.    Defendants' conduct, practices, and inactions combined and concurred to harm Pine Hill.

WHEREFORE, Pine Hill demands judgment for punitive damages against all Defendants, jointly and severally, in an amount to be determined by a struck jury in an amount in excess of the jurisdictional minimum of this Court, past and future, plus interest and costs.


## COUNT SIX

### Injunctive Relief

101.    Pine Hill incorporates all prior paragraphs by reference as if fully set forth herein.

102.    Pine Hill requests that this Court enter an Order enjoining Defendants from continuing the conduct described above and requiring Defendants to take all steps necessary to remove their chemicals from Pine Hill's water supplies and property.

103.    There is continuing irreparable injury to Pine Hill if an injunction does not issue, as Defendants' chemicals in the water supply pose a continuing threat to Pine Hill's property interests, and there is no adequate remedy at law.

WHEREFORE, Pine Hill demands injunctive relief against all Defendants, jointly and severally, requiring Defendants to remove their chemicals from Pine Hill's water system and to prevent these chemicals from continuing to contaminate Pine Hill's water supply.

**RELIEF DEMANDED**

WHEREFORE, Pine Hill respectfully requests this Court grant the following relief:

a)  Award Pine Hill damages in an amount to be determined by a jury sufficient to compensate it for removing PFAS from Pine Hill's drinking water and facilities, disposing of PFAS removed from Pine Hill's drinking water, real property damage, out of pocket expenses, potential lost profits and sales, and future expenses.

b)  Issue an injunction requiring Defendants to remove their chemicals from Pine Hill's water supply and to prevent these chemicals from continuing to contaminate Pine Hill's water supply and facilities.

c)  Award attorney fees and costs and expenses incurred in connection with the litigation of this matter.

d)  Award such other and further relief as this Court may deem just, proper, and equitable.

**JURY DEMAND**

PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL ISSUES OF THIS CAUSE.

Dated: July 9, 2024

Respectfully submitted,

*/s/ Matthew R. Griffith*
JERE L. BEASLEY (BEA020)
Jere.Beasley@beasleyallen.com
RHON E. JONES (JON093)
Rhon.Jones@beasleyallen.com

18

DAVID L. DIAB (DIA016)
David.Diab@BeasleyAllen.Com
MATTHEW R. GRIFFITH (GRI085)
Matt.Griffith@BeasleyAllen.com
JEFF D. PRICE (PRI086)
Jeff.Price@BeasleyAllen.com
GAVIN F. KING (KIN099)
Gavin.King@BeasleyAllen.com
ELIZABETH G. WEYERMAN (WEY001)
Elizabeth.Weyerman@BeasleyAllen.com
Beasley, Allen, Crow, Methvin, Portis
& Miles, P.C.
P.O. Box 4160
Montgomery, Alabama 36103
T: 334-269-2343
F: 334-954-7555

Attorneys for Plaintiff

DEFENDANTS TO BE SERVED VIA CERTIFIED MAIL